IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

───────────────────────────────────

NELSON BRITO,

                    Plaintiff,

          v.                        Civil Action No.
                                    9:06-CV-00154 (FJS/DEP)

R.K. WOODS, *et al.,*

                    Defendants.

───────────────────────────────────

APPEARANCES                         OF COUNSEL

FOR PLAINTIFF:

Nelson Brito, *Pro Se*
03-B-1309
Wende Correctional Facility
Wende Road
P.O. Box 1187
Alden, New York 14004

FOR DEFENDANTS:

HON. ANDREW M. CUOMO               AARON M. BALDWIN, ESQ.
Attorney General of the State      Assistant Attorney General
of New York
The Capitol
Albany, New York  12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

1

## REPORT AND RECOMMENDATION

Plaintiff Nelson Brito, a New York State prison inmate who is proceeding *pro se* and *in forma pauperis*, has commenced this civil rights action pursuant to 42 U.S.C. § 1983 against several corrections workers alleging violation of his constitutional rights arising out of his incarceration. In his complaint, plaintiff claims that defendants knowingly housed him with another inmate who suffers from Hepatitis C, thereby exposing him to a communicable and potentially fatal disease in violation of his Eighth Amendment right to be free from cruel and unusual punishment. As relief, plaintiff's complaint seeks compensatory damages in the amount of two and one-half million dollars.

Presently before the court is a motion by the remaining defendants in the action seeking summary judgment dismissing plaintiff's claims on a variety of grounds, and additionally asserting their entitlement to qualified immunity from suit.[1] Having carefully considered the arguments advanced by defendants in their motion, which plaintiff has not opposed, I

---

[1]      As will be seen, in an earlier report, later adopted by Senior District Judge Frederick J. Scullin, I recommended dismissal of plaintiff's claims against former New York State Attorney General Eliot Spitzer and former New York State Department of Correctional Services Commissioner Glenn S. Goord. *See* Dkt. Nos. 33, 36.

recommend that it be granted.

I.    BACKGROUND[2]

The facts underlying plaintiff's claims are neither complex nor controversial.  Plaintiff is a New York State prison inmate entrusted to the care and custody of the New York State Department of Correctional Services ("DOCS").  *See generally* Complaint (Dkt. No. 2).  Although he is currently being housed in another facility, at the times relevant to his claims in this action Brito was incarcerated at Upstate Correctional Facility ("Upstate") under special housing unit ("SHU") confinement for disciplinary reasons.[3]  Complaint (Dkt. No. 2) ¶ II (A); Dkt. No. 32; Transcript of Plaintiff's Deposition, conducted on April 1, 2008 ("Brito Dep.") at pp. 6-7.[4]

Upon his arrival at Upstate on December 7, 2005, plaintiff was assigned to a cell occupied by another inmate, John R.  Complaint (Dkt.

---

[2]    In light of the procedural posture of the case the following recitation is derived from the record now before the court, with all inferences drawn and ambiguities resolved in favor of the plaintiff.  *See Burtnieks v. City of New York,* 716 F.2d 982, 985-86 (2d Cir. 1983) (citations omitted).

[3]    Upstate is a maximum security prison comprised exclusively of SHU cells in which inmates are confined, generally though not always for disciplinary reasons, for twenty-three hours each day.  *See Samuels v. Selsky*, No. 01 CIV. 8235, 2002 WL 31040370, at *4 n.11 (S.D.N.Y. Sept. 12, 2002) (Schwartz, J.).

[4]    The transcript of plaintiff's deposition was filed under seal as Exhibit A to defendants' motion for summary judgment.  Dkt. No. 50.

No. 2) ¶ II (D) and Attachment (Brito Decl.).  According to plaintiff, John R.

suffers from a communicable and potentially fatal disease which, he was

told by the fellow inmate, is Hepatitis C.  *Id.*; Brito Dep. at p. 7.  Plaintiff,

who acknowledges having "a record of fighting with other prisoners",

attributes his cell assignment to an effort on the part of prison officials to

coerce his cellmate into discontinuing legal proceedings commenced by

him against former New York State Attorney General Eliot Spitzer.

Complaint (Dkt. No. 2) ¶ II (D).

Plaintiff maintains that despite complaining to various prison officials

regarding his cellmate's disease and his fear of exposure to Hepatitis C,

his complaints and requests that he be moved to another location within

the facility were ignored, and that as a result he continued to be housed

with John R. until on or before February 5, 2006, when he was transferred

out of Upstate.  Brito Dep. at pp. 22, 40.

II.    <u>PROCEDURAL BACKGROUND</u>

Plaintiff commenced this action in the Southern District of New York

in January of 2006.  Dkt No. 2.  The matter was subsequently transferred

to this court on February 6, 2006 by order of then-Chief District Judge

Michael B. Mukasey, based upon the fact that the events giving rise to

4

plaintiff's claims arose within this district.  Dkt. No. 5.

On September 21, 2006, following the transfer of the matter to this district, defendants Spitzer and Goord moved to dismiss plaintiff's claims against them for failure to state a cause of action.  Dkt. No. 22.  I issued a report on July 2, 2007, recommending dismissal of plaintiff's claims against those two defendants, with leave to replead.  Dkt. No. 33.  By order dated September 6, 2007, that recommendation was adopted in full by District Judge Scullin.  Dkt. No. 36.  In light of the fact that plaintiff did not thereafter file an amended complaint, his claims against defendants Spitzer and Goord have been dismissed with prejudice.  *Id.*

Following the transfer of this matter to this court and completion of discovery, the defendants who remain in the case, including Upstate Superintendent R.K. Woods; Corrections Sergeants B. Dominic, Schriver and Bishop; Nurse R. Davenport and Counselor Maynard, moved on September 15, 2008 for summary judgment dismissing plaintiff's claims against them.  In their motion, defendants argue that 1) to the extent his complaint can be construed to assert a retaliation claim, based upon defendants' actions toward fellow inmate John R., plaintiff lacks standing to assert that cause of action; 2) the record fails to establish the existence

5

of an Eighth Amendment violation, as a matter of law; 3) plaintiff's claim

for compensatory damages is precluded under 42 U.S.C. § 1997e(e); and

4) in any event, defendants are entitled to qualified immunity from suit.

Dkt. No. 50.  Despite the passage of the deadline for responding, plaintiff

has filed no opposition to defendants' motion, which is now ripe for

determination and has been referred to me for the issuance of a report

and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern

District of New York Local Rule 72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

     A.    Summary Judgment Standard

     Summary judgment motions are governed by Rule 56 of the Federal

Rules of Civil Procedure.  Under that provision, the entry of summary

judgment is warranted when "the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as

to any material fact and that the movant is entitled to judgment as a matter

of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317,

322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); *Security Ins. Co. of*

*Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir.

2004).  A fact is "material", for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).  A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.

A moving party seeking summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion.  *Anderson*, 477 U.S. at 250 n.4, 106 S. Ct. at 2511 n.4; *Security Ins.*, 391 F.3d at 83.  In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.  Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than mere "metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

7

U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party. *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). Summary judgment is warranted only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *See Building Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

B.    Legal Significance of Plaintiff's Failure to Respond

Before turning to the merits of plaintiff's claims, a threshold issue to be addressed is the legal significance, if any, of his failure to oppose defendants' summary judgment motion, and specifically whether that failure automatically entitles defendants to dismissal of plaintiff's

8

complaint, based upon their motion.

This court's rules provide that

> [w]here a properly filed motion is unopposed and the
> Court determines that the moving party has met its
> burden to demonstrate entitlement to the relief requested
> therein, the non-moving party's failure to file or serve any
> papers as required by this Rule shall be deemed as
> consent to the granting or denial of the motion, as the
> case may be, unless good cause is shown.

N.D.N.Y.L.R. 7.1(b)(3).  Undeniably, *pro se* plaintiffs are entitled to special

latitude when defending against summary judgment motions.  *See*

*Jemzura v. Public Serv. Comm'n,* 961 F. Supp. 406, 415 (N.D.N.Y. 1997)

(McAvoy, C.J.)).  Despite this measure of deference, the failure of an

unrepresented plaintiff to oppose a summary judgment motion does not

preclude the court from deciding the motion.  *Robinson v. Delgado*, No.

96-CV-169, 1998 WL 278264, at *2 (N.D.N.Y. May 22, 1998) (Pooler, J. &

Hurd, M.J.); *Cotto v. Senkowski*, No. 95-CV-1733, 1997 WL 665551, at *1

(N.D.N.Y. Oct. 23, 1997) (Pooler, J. & Hurd, M.J.); *Wilmer v. Torian*, 980

F. Supp. 106, 106-07 (N.D.N.Y. 1997) (Pooler, J. & Hurd, M.J.).  Before

summary judgment can be granted under such circumstances, however,

the court must review the motion to determine whether it is facially

meritorious.  *See Allen v. Comprehensive Analytical Group, Inc.*, 140 F.

Supp. 2d 229, 231-32 (N.D.N.Y. 2000) (Scullin, C.J.); *Leach v. Dufrain*,
103 F. Supp. 2d 542, 545-46 (N.D.N.Y. 2000) (Kahn, J.).

While a plaintiff's failure to properly oppose a defendant's motion
does not assure that the motion, however lacking in merit, will be granted,
that failure is not without consequences.  By electing not to submit papers
in opposition to their motion, plaintiff has left the facts set forth in
defendants' Local Rule 7.1(a)(3) Statement unchallenged.  Courts in this
district have routinely invoked Local Rule 7.1(a)(3) and its predecessor,
Local Rule 7.1(f), deeming facts set forth in a statement of material facts
not in dispute to have been admitted based upon an opposing party's
failure to properly respond to that statement.[5]  *See*, *e.g.*, *Elgamil v.
Syracuse Univ.*, No. 99-CV-611, 2000 WL 1264122, at *1 (N.D.N.Y. Aug.
22, 2000) (McCurn, S.J.) (listing cases); *see also Monahan v. New York
City Dep't of Corrs.*, 214 F.3d 275, 292 (2d Cir. 2000) (discussing district
courts' discretion to adopt local rules like 7.1(a)(3)).

I recommend that the court follow this well-established practice and,
notwithstanding plaintiff's *pro se* status, accept defendants' assertion of

---

[5]      Local Rule 7.1(a)(3) provides:  "The Court shall deem admitted any facts
set forth in the Statement of Material Facts that the opposing party does not
specifically controvert."  *See* N.D.N.Y.L.R. 7.1(a)(3).

facts as set forth in their Local Rule 7.1(a)(3) Statement as uncontroverted, in light of plaintiff's failure to respond to that statement, when reviewing defendants' motion for facial sufficiency.

      C.    <u>Retaliation</u>

Plaintiff claims that as a result of his record of fighting, he was placed in a cell with John R. in an attempt to intimidate that inmate into dropping his pending lawsuit against former New York State Attorney General Eliot Spitzer.  Complaint (Dkt. No. 2) ¶ II (D).   In their motion, defendants contend that Brito lacks standing to assert this claim.  While not at all certain that plaintiff's complaint states such a claim, in deference to his *pro se* status I will assume that it does for purposes of analyzing defendants' motion.

When adverse action is taken by prison officials against an inmate, motivated by the inmate's exercise of a right protected under the Constitution, including the free speech provisions of the First Amendment, a cognizable claim of retaliation lies under 42 U.S.C. § 1983.  *See Franco v. Kelly*, 854 F.2d 584, 588-90 (2d Cir. 1988).   In order to state a *prima facie* claim of retaliation under section 1983, a plaintiff must advance non-conclusory allegations establishing that 1) the conduct at issue was

protected; 2) the defendants took adverse action against the plaintiff; and 3) there exists a causal connection between the protected activity and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the prison officials' decision to take action against the plaintiff.  *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S. Ct. 568, 576 (1977); *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007); *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001) *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S. Ct. 992 (2002).  If the plaintiff carries this burden, then to avoid liability the defendants must show by a preponderance of the evidence that they would have taken action against the plaintiff "even in the absence of the protected conduct."  *Mount Healthy*, 429 U.S. at 287, 97 S. Ct. at 576.  If taken for both proper and improper reasons, state action may be upheld if the action would have been taken based on the proper reasons alone.  *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (citations omitted).

In this instance plaintiff has failed to allege any facts sufficient to show that he engaged in constitutionally protected conduct.  Instead, his retaliation claim appears to stem from the fact that his cellmate filed a

lawsuit against former Attorney General Spitzer, *John R. v. Spitzer*, 05 Civ. 6635 (S.D.N.Y. filed June 21, 2006) (SCR/LMS), an act which is plainly protected. *Williams v .Ingraham*, No. 04-CV-257, 2005 WL 3746222, at *2 (N.D.N.Y. Feb. 3, 2005) (Homer, M.J.) (citing *Morales v. Malckalm*, 278 F.3d 126, 131 (2d Cir. 2002)).  Plaintiff alleges that passing comments made by corrections officers have led him to believe he was placed in the same cell as John R. as a retaliatory measure in response to his cellmate's suit.  Brito Dep. at pp. 9-10.

Plaintiff's retaliation claim thus appears to be predicated upon protected activity of another individual, and adverse action taken toward that person based upon the protected conduct.  As such, plaintiff's retaliation claim fails to state a cause of action because, in general, as a prudential matter a plaintiff lacks standing to bring a claim asserting legal rights of another individual.  *See Farrell v. Burke*, 449 F.3d 470, 494 (2d Cir. 2006); *Thibodeau v. Portuondo*, 486 F.3d 61, 71 (2d Cir. 2007). Accordingly, I recommend that the portion of defendants' motion addressing the potential retaliation claim be granted due to lack of standing.

D.    Eighth Amendment

At the heart of plaintiff's complaint in this action is his contention that by placing him in a two person cell with John R., thereby exposing him to Hepatitis C, he suffered cruel and unusual punishment in violation of the Eighth Amendment.  In their motion, defendants assert no reasonable factfinder could conclude that solely by placing plaintiff in a cell with an inmate diagnosed with Hepatitis C, after following the protocol specified by DOCS policies regarding double celling, defendants subjected him to cruel and unusual punishment.

The Eighth Amendment bans cruel and unusual punishment, and is made applicable to the States through the Due Process Clause of the Fourteenth Amendment.  *Robinson v. California*, 370 U.S. 660, 675, 82 S. Ct. 1417, 1425 (1962).  The contours of the Eighth Amendment's protections are derived "from the evolving standards of decency that mark the progress of a maturing society."  *Rhodes v. California*, 452 U.S. 337, 346, 101 S. Ct. 2392, 2399 (1981) (quoting *Trop v. Dulles*, 356 U.S. 86, 101, 78 S. Ct. 590, 598 (1958)).  While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement; thus the conditions of an inmate's confinement are subject to Eighth Amendment scrutiny.  *Farmer v. Brennan,* 511 U.S.

825, 832, 114 S. Ct. 1970, 1976 (1994) (citing *Rhodes*, 452 U.S. at 349, 101 S. Ct. at 2400.

A claim alleging that prison conditions violate the Eighth Amendment must satisfy both an objective and subjective requirement;  the conditions must be "sufficiently serious" from an objective point of view, and the plaintiff must demonstrate that prison officials acted subjectively with "deliberate indifference".  *See Leach,* 103 F. Supp. 2d at 546 (citing *Wilson v. Seiter*, 501 U.S. 294, 297, 111 S. Ct. 2321, 2323 (1991)); *Waldo v. Goord,* No. 97-CV-1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J. and Homer, M.J.); *see also, generally, Wilson*, 501 U.S. 294, 111 S. Ct. 2321.  Deliberate indifference exists if an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1978; *Leach*, 103 F. Supp. 2d at 546 (citing *Farmer*); *Waldo*, 1998 WL 713809, at *2 (same).

To be sure, the Constitution imposes a duty upon the state to assume a certain degree of responsibility for an inmate's safety and general well being.  *Helling v. McKinney*, 509 U.S. 25, 32, 113 S. Ct.

15

2475, 2480 (1993) (quoting *DeShaney v. Winnebago County Dep't of Soc. Services*, 489 U.S. 189, 199-200, 109 S. Ct. 998, 1005-06 (1989)).  It is well-established that the mere practice of double-celling, however, does not violate this duty or otherwise run afoul of the Eighth Amendment's proscription against cruel and unusual punishment.  *Rhodes*, 452 U.S. at 347.

     To successfully prove a violation of the Eighth Amendment under the circumstances now presented, the "inmate must show 1) that the deprivation alleged is 'objectively sufficiently serious'... and 2) that the defendant official possessed a 'sufficiently culpable state of mind' associated with 'the unnecessary and wanton infliction of pain.'" *Trammell v. Keane*, 338 F.3d 155, 161 (2d Cir. 2003) (quoting *Farmer*, 511 U.S.  at 834, 114 S. Ct. at 1977).  The required culpable state of mind of the prison official is one of deliberate indifference.  *Farmer*, 511 U.S. at 834, 114 S. Ct. at 1977; *Trammell*, 338 F.3d at 162; *Bolton v. Goord*, 992 F. Supp. 604, 626 (S.D.N.Y. 1998). The prison official must know that the inmate faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Bolton*, 992 F. Supp. at 626 (quoting *Farmer*, 511 U.S. at 847, 114 S. Ct. at 1984).  The health

condition to which an inmate is exposed by prison officials need not be imminent, but instead can include problems that are "'very likely to cause serious illness and needless suffering' in the ensuing weeks, months or year." *Perez v. Hawk*, 302 F. Supp. 2d 9, 20 (E.D.N.Y. 2004) (quoting *Helling*, 509 U.S. at 33, 113 S. Ct. at 2480).

In keeping with these guiding principles, to determine whether defendants' conduct was tantamount to cruel and unusual punishment the court must first evaluate whether plaintiff's incarceration in the same cell as John R., who defendants concede may have had Hepatitis C, exposed plaintiff to a sufficiently serious risk of injury to his health, and if so must then determine whether defendants were deliberately indifferent to that danger by ignoring that serious risk of harm. *See Bolton*, 992 F. Supp. at 627. Plaintiff has never alleged, in his complaint or otherwise, that he actually contracted Hepatitis C or any other communicable disease while incarcerated in the same cell as John R, nor has he requested to be tested for any diseases. Brito Dep. at pp. 30, 68-69. Plaintiff stated that "it never came through my mind to be tested. Plus, I don't like needles and all that..." *Id.* at p. 69.

In support of their motion defendants have submitted an affidavit

17

from Dr. Lester N. Wright, the Deputy Commissioner and Chief Medical Officer of the DOCS and a physician licensed to practice medicine in New York, California and Oregon, as well as a board certified Diplomat of the American Board of Preventive Medicine and National Board of Medical Examiners.  *See* Wright Aff. (Dkt. No. 50-6).  In his affidavit, Dr. Wright states that it is well accepted within the medical community that Hepatitis C is not transmitted by casual contact, and is not often known to spread through sexual contact, but instead is generally contracted through direct exposure to the blood of an infected person.  Wright Aff. (Dkt. No. 50-6) at ¶ 29.  Although plaintiff claims he may have used John R.'s razor at some point, he admits that he never had sexual contact with his cellmate or came into contact with his blood.  Brito Dep. at p. 35.  Simply stated, plaintiff has failed to demonstrate that being housed in the same cell as John R. for approximately two months presented a serious risk of contracting Hepatitis C, nor has he presented any evidence that the disease was spread throughout any other cells.  *See Jones v. Goord*, 435 F. Supp. 2d, 221, 245-46 (S.D.N.Y. 2006); *Bolton v. Goord*, 992 F. Supp. at 628.

The record also fails to demonstrate that defendants subjectively

acted with deliberate indifference to any risks associated with Brito's potential exposure to Hepatitis C.  Dr. Wright notes that each New York prison inmate is given a full health appraisal upon entrance into the DOCS system; that initial appraisal includes screening for Hepatitis C. Wright Aff. (Dkt. No. 50-6) at ¶ 12.  The record also discloses that the DOCS educates inmates upon entrance into the system, and throughout the course of their incarceration, regarding the transmission of diseases, providing information regarding how to prevent their spread and the manner in which various diseases are not transmitted.  Wright Aff. (Dkt. No. 50-6) ¶ 14.  That education program includes information about transmission of Hepatitis C.[6]  *Id.*

Following governing New York regulations, *see* N.Y. Comp. Codes R. & Regs. tit. 7 § 1701 (2005), defendants abide by New York Public Health Law's list of communicable diseases to determine if an inmate's disease is infectious, thereby making him or her unsuitable for placement in a double cell. Wright Aff. (Dkt. No. 50-6) ¶ 22.  Dr. Wright states that

---

[6]  In their motion, defendants have presented evidence from the U.S. Department of Health and Human Services Center for Disease Control and Prevention ("CDC"), suggesting that education is the most effective way to prevent the spread of Hepatitis C in correctional facilities.  Wright Aff. (Dkt. No. 50-6) Exh. 3.  Significantly, the CDC has not recommended any form of segregation or single housing for inmates infected with the disease.  *Id.*

there is no medical reason to preclude Hepatitis C infected inmates from double cell housing in every instance. *Id.* at ¶ 33. Since Hepatitis C is transmitted through blood and not casual contact, by policy the DOCS prevents only those inmates who may engage in assaultive or homosexual behavior from being placed in double cells with others diagnosed with the disease, with Wright offering his opinion that such a practice is reasonsable and adequate to protect the health of inmates in double cells from infection with Hepatitis C.  Wright Aff. (Dkt. No. 50-6) ¶¶ 29, 32-33.

Plaintiff admits that upon his arrival at Upstate he was evaluated by defendant Davenport and approved for double celling.  Brito Dep. at p. 10; *see also* Defendants' Motion Exhs. (Dkt. No. 50)  Exh. B (SHU Double-Cell Information Sheet).  It appears that John R. was similarly evaluated and approved to be housed in a double cell.  Defendants' Motion Exhs. (Dkt. No. 50) Exh. B. (SHU Double-Cell Information Sheet).

The issue of double celling of inmates diagnosed with a potentially contagious disease is by no means novel, and in fact has been addressed by several courts, including courts in New York.  In *Jones*, for example, the court held that absent any evidence that Hepatis or HIV is actually being spread by virtue of the DOCS policy of double celling, the mere

potential for spreading is insufficient to establish that inmates are at risk of contracting the diseases, and thus subjected to cruel and unusual punishment.  435 F. Supp. 2d at 245-46.  The Southern District of New York and the Eighth Circuit Court of Appeals also have held that since HIV is not spread by casual contact, double celling of an inmate with an HIV positive cellmate does not present a serious injury sufficient to establish cruel and unusual punishment.  *Bolton*, 992 F. Supp. at 628; *Glick v. Henderson*, 885 F.2d 536, 539 (8th Cir. 1988).

In sum, the record in this case fails to confirm plaintiff's fear that he was potentially exposed to Hepatitis C when housed with another inmate diagnosed as suffering from the disease.  Instead, the record reveals that New York inmates receive considerable education concerning the transmission of Hepatitis C, and that merely by housing plaintiff with another individual with the disease, without more, defendants did not place plaintiff at risk of contracting the disease.  The record also reflects that prior to placing plaintiff in a cell with the infected fellow inmate, defendants followed an appropriate protocol and carefully considered the potential ramifications of exposing him to that situation.  Under these circumstances, no reasonable factfinder could conclude that plaintiff was

subjected to cruel and unusual punishment in violation of his rights under

the Eighth Amendment.

### E.   Compensatory Damages

In his complaint, plaintiff asserts that as a result of his exposure to

John R. over a two month period he suffered mental, emotional and

psychological pain as well as distress.  Complaint (Dkt. No. 2) ¶ II. (D).  In

their motion, defendants assert that because he has suffered no physical

injury, plaintiff's claim for compensatory damages is subject to dismissal.

42 U.S.C. § 1997e(e), a provision enacted as part of the Prison

Litigation Reform Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321

(1996), provides that

> no Federal civil action may be brought by a
> prisoner confined in a jail, prison, or other
> correctional facility, for mental or emotional injury
> suffered while in custody without a prior showing of
> physical injury.

42 U.S.C. § 1997e(e).  While section 1997e(e) does not by its terms bar a

plaintiff from bringing suit in the absence of a physical injury, it limits the

potential monetary recovery in such a case to nominal or punitive

damages, in addition to declaratory or injunctive relief, even for a claim

relating to a constitutional violation.[7] *Thompson v. Carter*, 284 F.3d 411,

416 (2d Cir. 2002); *Mejia v. Goord*, No. Civ.A.903CV124 (LEK/D), 2005

WL 2179422, at *5 (N.D.N.Y. Aug. 16, 2005) (citing *Shariff v. Coombe*,

No. 96 Civ. 3001, 2002 WL 1392164, at *4 (S.D.N.Y. June 26, 2002)

(Jones, J.)*); Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999); *Allah

v. Al-Hafeez*, 226 F.3d 247, 251 (3d Cir. 2000).

On the record now before the court, no reasonable factfinder could

find that plaintiff's incarceration with John R. for up to sixty days, without

---

[7]     It should be noted that while this appears to be the position of the
Second Circuit, various other courts have interpreted section 1997e(e) to exclude
constitutional claims from its coverage, finding that barring claims for mental or
emotional damages absent a physical injury in such instances would "effectively
immunize officials from liability for severe constitutional violations."  *See, e.g., Siggers-
El v. Barlow*, 433 F. Supp. 2d 811, 816 (E.D.M.I. 2006); *see also Shaheed-Muhammad
v. Dipaolo*, 393 F. Supp. 2d 80, 108 (D. Mass. 2005) (holding that "where the harm that
is constitutionally actionable is the violation of intangible rights - regardless of actual
physical or emotional injury - § 1997e(e) does not govern," but was instead meant to
curb lawsuits for defective haircuts or being served chunky peanut butter instead of
creamy.); *Canell v. Lightner*, 143 F.3d 1210, 1213 (9th Cir. 1998) (holding that "§
1997e(e) does not apply to First Amendment claims regardless of the form of relief
sought."); *Oliver v. Keller*, 289 F.3d 623, 630 (9th Cir. 2002) (when plaintiff's damages
stem from a violation of the Fourteenth Amendment, and not alleged mental or
emotional injuries, he can seek compensatory, nominal or punitive damages under §
1997e(e).); *Rowe v. Shake*, 196 F.3d 778, 781 (7th Cir. 1999) (finding plaintiff is
entitled to relief absent a physical injury since "a deprivation of First Amendment rights
standing alone is a cognizable injury").  By contrast the Eleventh Circuit, like the
Second Circuit, has considered both the plain meaning of the statute and its legislative
history as evincing an intent on the part of Congress to reduce the number of prisoner
lawsuits, using the unequivocal language "no federal civil action may be brought,"
without any exceptions, meant to include claims of constitutional deprivations.  *Harris
v. Garner*, 216 F.3d 970, 984-85 (11th Cir. 2000), *cert denied*, 532 U.S. 1065, 121 S.
Ct. 2214 (2001).

exposure to his blood or any other bodily fluids, resulted in a physical injury to Brito.  Plaintiff has not alleged that he has suffered any physical signs or symptoms of Hepatitis C, or that he contracted Hepatitis C from John R., and admits that he did not even request to be tested for any communicable diseases.  As a result, I recommend that this portion of defendants' motion be granted, and that plaintiff's claim for recovery of compensatory damages be dismissed.

IV.   SUMMARY AND RECOMMENDATION

Plaintiff's complaint in this action alleges that he was placed in a cell with another prisoner who was infected with Hepatitis C and that the decision to do so was made to dissuade the fellow inmate from pursuing a lawsuit asserting claims against former New York State Attorney General Eliot Spitzer.  To the extent that plaintiff's complaint, when generously construed, could be considered to assert a claim of retaliation, I find that plaintiff lacks standing to raise such a claim since it is clearly predicated upon protected activity on the part of John R., rather than by plaintiff.  I further find that no reasonable factfinder could conclude that solely by placing him in a cell with another inmate infected with Hepatis C, defendants subjected plaintiff to cruel and unusual punishment.  I further

find that plaintiff's failure to demonstrate that he suffered physical injuries as a result of defendants' actions precludes him from recovering compensatory damages for mental anguish and emotional distress. Finally, in light of my recommendation on the merits I find it unnecessary to address defendants' qualified immunity argument.

Based upon the foregoing, it is hereby respectfully

RECOMMENDED that defendants' motion for summary judgment (Dkt. No. 50) be GRANTED, and that plaintiff's complaint be DISMISSED as against all remaining defendants.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties in accordance with this

court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:   July 13, 2009
         Syracuse, NY